Case number 18-6207, Larry G. Philpot v. LM Communications II of SC, oral argument not to exceed 15 minutes per side. Stacey Ann Cole, for the appellant, you may proceed. Good morning. Good morning, Your Honors. May it please the Court, my name is Stacey Cole. I'm here today on behalf of Appellant Larry Philpot, who's joined us in the courtroom today. I'd like to reserve three minutes for rebuttal. Very well. While we're here today on behalf of Mr. Philpot, this issue is bigger than this case. The District Court's decision, if upheld, will effectively render copyrights meaningless for prevailing plaintiffs in relatively small-dollar award cases. This is, or it should have been, a garden-variety copyright dispute, copyright infringement case, where our plaintiff photographer, Mr. Philpot, on the one hand, and a defendant, Radio Station & Media Company, on the other hand, which I'll refer to as LM Communications. So you say that you make a pretty bold assertion that it's going to make copyright in small cases meaningless. And is that because you say that the attorney fee issue, or the denial of attorney's fees, would really chill the ability of a right holder to protect their copyright under existing law? Because the Court found that your client prevailed on the copyright issue. That's right, Your Honor. Because while our client did prevail on the... I thought the Court found that you did not prevail. That's actually, yes. That's the first issue, isn't it? That's correct. That's a clarification. Yes, we did win on liability with respect to our... The Court, I think erroneously, held that you did not prevail, which I think infected the non-award of attorney fees, because the Court, erroneously, I think... So when I say that you prevailed, the Court certainly found the existence of a copyright. Yes, Your Honor. There were a number of issues, and the Court found that you did not prevail on a majority of those issues, but did find the existence of a copyright. That's correct, Your Honor. Well, it's the prevailing party determination which is important. I think that's what the Court erred in finding that you were not the prevailing party, and I think that was clear error. And the issue is whether that affected the denial of the attorney fees, although the District Court did go through the factors and at least purported to apply the factors. Yes, Your Honor. Abuse of discretion is one of the definitions is if they apply the wrong legal standard, and I guess my question is was the wrong legal standard applied? Yes. And then did it affect the non-award of attorney fees? All of that is essentially our position today, Your Honor. So I want to ask you, on this whole attorney fee issue, the Court, as Judge Griffin said, went through a bunch of factors and basically imposed the penalty because the Court said, you guys engaged in unreasonable discovery tactics, and that to reward that conduct would be to encourage the filing of frivolous lawsuits. So would you address that a bit? Absolutely, Your Honor. With respect to the Court's analysis of the Fogarty factors here, which would include a look at the party's conduct, that's one factor. But backing up, the Court had an obligation under Kurtzang to look specifically at the unreasonableness of the losing party. Here, because the Court erred in not finding Mr. Philpott to be the prevailing party, the Court then did not properly analyze the Fogarty factors under Kurtzang because it didn't find LM Communications to be the losing party. And that's where the focus needs to be with respect to the unreasonableness of the party's positions. We would also submit, Your Honor, that the analysis of the frivolousness and motivation factors under Fogarty were in error because the Court did not look at LM Communications' frivolousness of their malicious prosecution, of their abusive process claims, only looked at the fact that this infringement claim was not frivolous. It completely ignored LM Communications' conduct in that regard. The only look at, quote, both parties' conduct was under the unreasonableness factor. And in that case, in that particular factor here, the Court should only have looked at LM Communications' conduct. And I can certainly go into some of the detail behind the motions, the discovery motions that were filed. But very specifically, Mr. Philpott filed one motion to compel, which was effectively granted, a motion for attorney's fees, which was in response to defendant's motion for sanctions. It was filed in the response brief and, by rule, had to become its own motion for sanctions. And the third motion was for an adverse inference based on LM Communications' spoliation of evidence, which went to Mr. Philpott's copyright management information claim, essentially an elevated damages standard. When they failed to preserve the native post and the native photo, Mr. Philpott had absolutely no evidence from which he could tell whether LM Communications actually removed that metadata. We had no choice but to file a motion for sanctions for an adverse inference. Once the Court denied that motion for sanctions, Mr. Philpott let go of that particular heightened damage claim. But nonetheless, he succeeded on his core claim of copyright infringement and succeeded on all of LM Communications' claims and defenses. Again, as, Judge, you have said, it is clear error that he was not determined to be the prevailing party. But that necessarily impacted the Court's analysis of the remaining factors under Fogarty. Again, the Court ignored Kurtz's saying. That is not only an application of the wrong standard, but she misapplied the factors of Fogarty. Those are two bases for this Court to reverse for abuse of discretion. She did not look at the losing party's conduct? That's the essence of your argument? The essence of the argument is that for the unreasonableness factor, one, she did not give that substantial weight under Kurtz's saying. So that is to be kind of the benchmark factor among consideration of the other factors. But that is to be sort of the primary one looked at. And that's to be focused on the losing party, which in this case would have been LM Communications. So that failure to consider that and properly look at that evidence, that constituted an abuse of discretion under the facts of this case? Yes, Your Honor. This case, I mean, it looked like a clear copyright violation from the outset. But they nevertheless defended against this thing. There was never an offer of judgment in this case? No, Your Honor. There was not. I mean, there's not a lot of money involved. It seems like that would have been the thing to do is just to admit liability and do it, or make an offer of judgment, I guess, rather than fight, fight, fight. But I can kind of understand the judge's frustration that the case doesn't – it's a $3,500 case, and it went on and on and on. But it seemed like the outset it was clear liability. But they did not admit liability at all until trial? They did not admit liability at all, Your Honor. At all? We won summary judgment on that issue. And, again, it wasn't just that they didn't admit liability. They went on the offensive here with claims that they ultimately did not defend at summary judgment. But, nonetheless, Mr. Philpott was forced to move for summary judgment on those abusive process and malicious prosecution claims where they demanded greater than $100,000 in damages. With respect to what we would suggest – One of the things that I found a little difficult to figure out here was part of LM's response here, though, prompted by the fact that the claim was that this was a willful violation worthy of $150,000. I mean, it didn't seem, looking at the facts of this case, that there was a whole lot of basis for claiming a willful violation here. So it was like everybody was trying to get the other side to respond as outrageously as possible. Your Honor, with respect to the amount of damages, that is a question that we did not even move for summary judgment on. We understood that that was something that was going to be more of a question of fact. But the fact that we had to move for summary judgment at all on liability sort of sets the tone here and gives an example of how unnecessarily contentious this case was. While we did not appeal the willfulness decision, we do believe there were facts in the record to support our pushing for that particular assessment. And simply because we had a trial on the question of whether the conduct rose to the level of willfulness has no bearing on whether or not those claims for abuse of process, malicious prosecution, whether those were reasonable, whether they were frivolous, which we submit that – What were the facts, rather, undergirding the willfulness claim? Because as I understand, the photos were on a Wikipedia or some kind of site, like a free site. And when LM was notified about the violation, the images were taken down. So what were the facts that supported the willfulness claim? This is a media company. This is a radio station. And Mr. Martin, who is the president and sole owner of this radio station, among a dozen others, testified he's been in the business for 30 years. He knows copyrights. They do this day in, day out with respect to music licenses. And this is not the first time this particular radio station entity has been sued for copyright infringement. But they also had no controls in place, no process, no training, no nothing. He couldn't even identify who his interns were at the time. Who bears the burden of that consequence? Given the trial court's decision, Mr. Philpott is now forced to bear the burden of that consequence. And that brings me back to the original point, which is in small dollar infringements, there is nowhere else to go to seek enforcement of your remedies. And here, with respect to the willfulness argument, Your Honor, they should have known better. We submitted that there is a reckless... It sounds more like negligence as opposed to intentional or willful misconduct to me. Well, Your Honor, under the Zumba case in the Sixth Circuit, which we did not address at length in our briefs because the willfulness issue was not part of this appeal, we submit that the reckless disregard standard also falls within the idea of intentional conduct. Right. So because, again, media company, radio station, this is their bread and butter, copyrights and licensing issues. If they don't know better, who does? Who can be held to even that standard? And again, Mr. Philpott should not have to bear the burden of that. And Your Honors, we would respectfully request that this court reverse the trial court's decision on prevailing party on Mr. Philpott's entitlement to fees, but go one step further here and not remand to the trial court to determine whether Mr. Philpott is entitled to attorney's fees. The record is clear that he should be. And this court has the authority and the power to remand for the dollar amount the reasonableness of the attorney's fee award. And that is what Mr. Philpott requests that this court do today. So you would have us remand for an award of attorney fees but allow the district court at its discretion to set the amount? Yes, Your Honor. Thank you. Thank you. Good morning. Good morning. May it please the court, my name is Bill Allen. I'm appearing here on behalf of the appellee, LM Communications II of South Carolina, Inc. Mr. Allen, let me start by asking you to pick up where appellate counsel left off. She says that LM is a sophisticated party, deals with copyright issues all the time, knows that law, but also has been on notice because they've been sued for copyright violations before. So under the facts of this case, why weren't LM's actions willful in posting that photo even on a free site? LM Communications at the time had only five employees. Its chief executive and owner, Len Martin, is in Lexington, Kentucky. Mr. Philpott, for whatever reason, discovered the infringement or the posting of the photograph in April of 2014 but did not report it to LM Communications for six months. For that reason, LM Communications was constrained in its ability to find out how this happened. Now, it is true, and to this day, we don't know how it happened. We think that an intern copied the photo and posted it on the website, the community events page of the website posting the Willie Nelson concert, but we don't know for sure. We know it happened, and LM Communications admitted that from the beginning. There was never an issue about whether or not the image was copied and posted to the website. There was an issue about whether or not Mr. Philpott was able to prove that he was the owner of that copyright. And there were, as the- Isn't that a matter of public record? It is a matter of public record. Why weren't you able to discover that yourself? Well, I felt that it was Mr. Philpott's duty to prove his case. Prove his case. I mean, you have a public record that you just don't bother to check, and then your defense is, well, they haven't proved that they registered it when it's in the record. I mean, I don't quite understand that argument. Well, you know, that was an issue, but as Judge Batchelder indicated, this case was very aggressively prosecuted by Mr. Philpott. Why don't you make an offer of judgment for $3,500? Just admit that you violated their copyright and move on. I mean, instead, you litigated. You filed a counterclaim for $100,000. Well- And malicious prosecution? I mean, talk about frivolous. I thought your counterclaim was totally frivolous. Well, the district court agreed with you, apparently, because you dismissed it. And you haven't appealed that, right? No. Okay. No, I have not. No, but going back to your question, again, on its experiences with copyrights, it is true. It's a radio station, and it deals with music licensing all the time. This is a little bit different, a copyright and a photo. And going back in 2014, the Internet wasn't what it is today, and the way it was used is not the way it is used today. So this was a very small sidelight of its business. Its main business is being a radio station. Doesn't he own other radio stations as well? Yes, he does. How many other radio stations does he own? Eleven. Okay, so he's not just five employees here. He's got 11 radio stations. So he is sophisticated. In three states. In three states. That is correct. Okay, we have a sophisticated defendant here, right? I would not disagree that he's a sophisticated businessman. I would not disagree with that. I'd like to turn to the question of the court's ruling on who was the prevailing party. The court said this. The court finds that Philpott cannot be said to be the clear prevailing party, given the amount of claims he lodged and the relatively small award the court granted under Section 504C1 relative to what he sought. The court's July order was not a clear win for Philpott. The order partially granted and partially denied Philpott's motion for summary judgment. I want to emphasize the district court did not find that LM Communications was the prevailing party. The court found that Mr. Philpott was the prevailing party. I think the language that I just quoted from the opinion, really the upshot of that was that the court felt that the claim had been overly aggressively prosecuted by Mr. Philpott and that he was, even through trial and after trial, was asking the court to make a finding of willfulness. But the court certainly found that there had been an infringement, and even if he filed 50 claims, the court found for him on that infringement claim. That's correct. So when we talk about prevailing party, the only party in that litigation where there was a finding was for Mr. Philpott, correct? That's right. There was no finding that LM Communications was the prevailing party. I understand that. But there was only one finding, and even though the court said he was not a clear winner, there were reasons that the court expressed for that. But what I'm saying today is that nobody disputes that the court did say there had been an infringement, and so however we define that win, he was the one who prevailed on that claim. That's correct, and the court so found. Yes. So he was the prevailing party, and for that reason the court went ahead and engaged in an analysis of the Fogarty factors. Also, again, the district court was in the best position to observe what was going on in its court, and I think the quote that I just read, together with the rest of the opinion, suggests that the court felt that this was being overly aggressively prosecuted by Mr. Philpott, and indeed if you look in his post-trial proposed findings of fact and conclusions of law, he did ask for a finding of willfulness, even though he admitted at trial that he had no evidence that LM Communications knew that it was committing copyright infringement when it copied the photo, and also asked for an award of statutory damages up to $150,000. They want to characterize this as a small-dollar claim. It became a small-dollar claim when the court ruled. Before that, it was a big-dollar claim, and I think that that is part of what is reflected in the district court's decision. And I might say also that Congress gave district courts broad discretion to grant or deny attorneys' fees and copyright claims for a very good reason. In the hands, it is true. They argue this, and I agree, that in the hands of an honorable litigant, the prospect of a fee award does provide access to the courts and counsel for copyright owners with even small claims. However, once a perception develops that an award of attorney's fees is guaranteed, the dynamic changes. At that point, a litigant, even with a small claim, has every incentive to overly aggressively prosecute it and go for the gold ring every time, and I think that's what happened in this case. That is why this court should not do anything that would constrain a district court's discretion to deny an award of attorney's fees. In making that argument and talking about the aggressive prosecution of the claim, I think you fail to address or acknowledge the role of L&M in escalating that prosecution because, as Judge Griffin said earlier, when that claim was filed and the claims made, L&M came in with other counterclaims and requests that also served to escalate that. So I think that you have to acknowledge the role of both parties in that. It doesn't fall solely on Mr. Philpott. Well, I can't get into the efforts that were made to resolve this case before it was filed and after and during the litigation. I can tell you there were significant efforts to come to a reasonable resolution. How about now? I mean, we have a mediation office. I mean, this is not a big case for us. I mean, you guys are arguing about some amount of attorney fees. Has there been an effort to mediate in our court? Yes, and there was an effort to mediate in the district court. Would it be any value for us to send it back to our mediation office? Your Honor, we were unsuccessful in the mediation, in both mediations. And it has been a difficult task to prosecute this case or to defend it. And I don't know, frankly. You're talking about diminishing returns now. I'm sorry? I feel like you're looking at diminishing returns. Well, it's been diminishing returns from day one. I guess I'm looking for an answer. Is it worthwhile for us to send it back to the mediation office or not? Well, based on my experience in making efforts to resolve this, I would say there is not. There is not. Okay. But, you know, that's not because of my unwillingness to talk about resolving this case. All right. In regard to the district court's consideration of the factors, did the district court look at the unreasonableness of the conduct of L&M communications or not? It did. And here's what the opinion said. The court instead will focus on the reasonableness of the suit and the parties' actions along with the deterrence value of an award of attorney's fees. The parties and the court have expended considerable time, energy, and resources to an action that is not complicated but was made so due to the actions of the parties. Both parties filed numerous discovery and sanctions-type motions necessitating the court's constant involvement and oversight. Likewise, both parties dropped various claims that were largely unsubstantiated but only after the other party expended time and fees to address those claims. There's no question the court considered the conduct of both parties. No question. She said she did. Now, she didn't say every single consideration and the weight given to every single consideration in the conduct of the parties, but she clearly, clearly considered the conduct of both parties. And I don't believe that it is correct, a correct statement of the law, that the focus has to be exclusively on the conduct of the losing party. The way I read the law, the district court's authorized to consider the entire case, any and all considerations bearing on the case. Now, the conduct of the parties is a key or an important factor, but it's not controlling, and the Supreme Court said that explicitly. In your view, did the, I mean, I know you're appealing the prevailing party determination. You claim that the district court got it correct by saying that the plaintiff was not the prevailing party, but assuming you're wrong on that and the district court erred in that ruling, did that not affect her evaluation of these factors that she considered, that she starts out by saying Philpott was not the prevailing party? Didn't that affect her evaluation of them? She said Philpott was not the clear prevailing party, and what she was saying was what he got. What does that mean? I mean, there's a legal standard of a prevailing party, which I think we all know what it means, but I don't know what clear prevailing party means, but it's a new term to me. Well, the way I read her opinion in context, she was saying that he was not the clear prevailing party in the sense that he didn't recover all that he was seeking. So what? Okay. Well, I don't know. Very few plaintiffs, say a personal injury case, get everything they want. If they sue for $3 million and they only get a million dollars, well, they did not clearly prevail on everything because they didn't get the other $2 million they were suing, but they're still the prevailing party. They still win the case. Well, he won the case. She ruled in his favor. Yeah, and she didn't have any problem ruling in his favor either. I don't know. She had to rule in his favor under the statute. She had to. Well, why didn't you admit liability then? I mean, you contested liability all the way through this case, and you say she had no choice. Well, why were you defending the statutory damages? Well. Why didn't you make an offer of judgment for him? In hindsight, that might have been a good thing to do. Well, I guess you denied it in your answer because you hadn't checked the public record to determine that they actually had registered the copyright. That's correct. You didn't do your job to check the public record. Well, I took discovery from Mr. Philpott. I thought that with the experience that he had had in litigating these cases, that he'd be able to come with evidence very quickly that would put the matter to rest, and he didn't. Okay. If the Court has no further questions, I'll yield any balance of my time. It looks like I'm about out. I submit that the standard of review here is very deferential to the district court. The district court did exactly what it was supposed to do. It considered the fogarty factors, made a proper analysis, and exercised its very broad discretion. For that reason, I think the judgment of the district court should be affirmed. Thank you, Mr. Allen. Thank you. All right. Three minutes for rebuttal. Thank you, Your Honors. I'm just going to spend my time addressing a few specific points that were made that I think are in error here. One, the trial court's failure to find Mr. Philpott a prevailing party is because essentially there's a new standard that was set forth in the district court's opinion that he should be a clear prevailing party. That is simply contrary to the law. The standard is to be reviewed de novo, but that is a clear error of the law. That is not the requirement. The law is also clear under Kertzing that the look at the objective unreasonableness factor is to be focused on the losing party. Even as appellees counsel analyzed the district court's opinion for you on that factor, the most she looked at was, quote, the parties in passing in a couple of sentences. But the two pages devoted to that analysis were 90% focused solely on Mr. Philpott's conduct. Again, that itself is misapplication of the law and an abuse of discretion. With respect to that same factor, the frivolousness of the counterclaims and the unreasonable demand for $100,000 should absolutely have been a significant focus of both that and the frivolousness factor under Fogarty. Appellee also submits that they had no real ability to investigate what happened at the time of the infringing post because Mr. Philpott waited six months from when he says he discovered it to putting them on notice of the infringement. If a sophisticated company can't identify its interns six months ago, I would submit there may be a greater problem there. But with respect to that delay being a meaningful factor here in sort of the litigation and the contentiousness in the attorney's fees, it's meaningless and irrelevant. This court can also see from-yes? Backing up to I think it was your third point there. So is it your position that I think we should all concede that the court erred with regard to the prevailing party question. But is it your position that let's assume that both sides just engage in reprehensible litigation conduct but one side prevails as a matter of law on the core issue but not on a bunch of other issues. Both sides are reprehensible. The court can't take into account the plaintiff's reprehensible conduct, has to focus only on the defendants with regard to attorney's fees. Is that your position? No, Your Honor, it's not. Our position here is that the factor of unreasonableness in the litigation conduct that is to be given substantial weight is to be focused on the losing party. But that's one factor. So it doesn't matter if the plaintiff is also unreasonable? Certainly the court can consider that, but that is not to be given the same substantial weight that the objective unreasonableness factor is here in this concept, in this case under Kertzing. Your Honor, I recognize that there are six cases that occurred before Kertzing where there were situations of reprehensible conduct on both sides. Here the docket is clear. This court can look at the record. There was not reprehensible conduct. Mr. Philpott was never sanctioned. He was never reprimanded. In fact, the motions here on discovery, in my view, were frankly normal course motions. As Mr. Allen noted, there were efforts to resolve this case, but there was no Mr. Philpott clearly simply did not engage in that kind of conduct. I see that I'm out of time, Your Honor. Any further questions? Judge Stone? Judge Batchel? Perhaps we should ask the other side whether, in her view, there is simply no point in trying to resolve this short of our ruling. Certainly. You mean mediation? Yeah. Is there any value of sending this back to our mediation office? Your Honor, we did make efforts to resolve this case. While I disagree with Mr. Allen's representations about the level of effort made, I would agree that I don't think that there is a lot of benefit to that at this point. That's all we wanted to know. We're not into futile exercises here. Thank you. All right. Thank you very much. The case will be submitted. We may call the next case.